DANIEL LORAS GLYNN, ISB #5113
SUSAN E. HUNT, ISB #12208
JONES • WILLIAMS • FUHRMAN • GOURLEY, P.A.
The 9th & Idaho Center
225 N. 9th Street, Suite 820
PO Box 1097
Boise, ID 83701
Telephone: (208) 331-1170
Facsimile: (208) 331-1529
dglynn@idalaw.com
shunt@idalaw.com

*Attorneys for the Plaintiff PacificSource Community Health Plans*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PacificSource Community Health Plans, an Oregon corporation, <br><br> Plaintiff, <br><br> v. <br><br> Dean L. Cameron, in his professional capacity as Director of the Idaho Department of Insurance, <br><br> Defendant. | Case No. <br><br> COMPLAINT FOR DECLARATORY JUDGMENT |

Plaintiff PacificSource Community Health Plans ("PCHP"), by and through its attorneys of record, Daniel Loras Glynn and Susan E. Hunt of the firm Jones Williams Fuhrman Gourley, P.A., as and for a Complaint against the Defendant Dean L. Cameron, in his professional capacity as Director of the Idaho Department of Insurance hereby complaints and alleges as follows:

COMPLAINT FOR DECLARATORY JUDGMENT - 1

## JURISDICTION AND VENUE

1. PCHP is an Oregon non-profit corporation in good standing in Oregon and duly licensed to administer policies of insurance within the State of Idaho.

2. Dean L. Cameron, in his professional capacity, is the Director of the Idaho Department of Insurance (hereinafter "DOI") which is an agency of the State of Idaho responsible for the regulation of insurers in the State of Idaho on matters not preempted by federal law.

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the instant controversy presents a federal question, *to wit* whether 42 U.S.C. §1395w-26(b)(3) completely preempts the actions of the Defendant as alleged herein.

4. This Court has authority to award the requested declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 as well as Federal Rule of Civil Procedure 57 and 65.

5. Venue is appropriate under 28 U.S.C. § 1391(b) because the Defendant engages in his official duties within this District and because a substantial part of the acts or omissions giving rise to this action arose from events occurring within this District.

## FACTUAL BACKGROUND

6. PCHP is authorized by the Centers for Medicare & Medicaid Services ("CMS") to offer Medicare Advantage ("MA") plans to Medicare eligible participants in Idaho and is known as a Medicare Advantage organization.

7. Generally, when seniors become Medicare-eligible, they generally must choose whether to enroll into original Medicare or to enroll into an MA plan. MA plans are private health insurance that offers alternative benefits above what is offered under the original Medicare, such as prescription drug, dental, vision, audiology, and other non-medical benefits.

8. PCHP is also licensed to provide insurance in Idaho and authorized to write MA policies for Idahoans. In order to retain the ability to write MA policies, PCHP must comply with all federal regulations which strictly and exclusively control the administration and marketing of the MA product.

9. In accordance with federal regulations, PCHP can choose to collaborate with insurance brokers to market the MA product.

10. When engaging insurance brokers, PCHP and the insurance broker enter into a contract, known as the Medicare Producer Agreement ("MPA"). Each MPA is an annual contract subject to renewal and outlines a commission payment schedule for "Medicare Advantage contracts solicited by Producer and issued by PacificSource." The MPA also indicates that commission schedules may be amended and that not all products will earn a commission. Any commission changes apply to policies written or renewed after the effective date and do not affect the commissions owed for previously written and renewed contracts.

11. Under PCHP's agreement with CMS, PCHP submits a range for compensation to be paid to a broker as commission amounts not to exceed the statutory maximum.

12. The budgeting process with CMS requires that PCHP submit a plan portfolio on the first Monday in June each year.

13. The actual rates, including the maximum allowable reimbursement rate for insurance brokers, are not released by CMS until late July/early August. This year the rates were not finalized by CMS until August 20, 2025.

14. Upon receipt of reimbursement rates from CMS, PCHP had to reevaluate the portfolio plan and reassess the positions to ensure that sufficient reserves were present to satisfy the claims of MA plan participants. After the reassessment, PCHP recognized a need to reduce

COMPLAINT FOR DECLARATORY JUDGMENT - 3

expenses. PCHP took affirmative steps to reduce expenses in several different areas, but as relevant here, PCHP elected to reduce expenses in the form compensation to be paid to brokers after November 1, 2025.

15. To be clear, PCHP's changes to the compensation schedule applied only to MA plans which brokers obtained, or renewed, after November 1, 2025. In other words, if a broker obtained a new enrollment, or a renewal of an existing policy, before November 1, 2025, the broker would still be compensated under the compensation schedule in place prior to November 1, 2025.

16. After PCHP notified insurance brokers of the compensation changes, DOI began investigating and issued Bulletin No. 25-06 on October 15, 2025. The bulletin indicated that DOI considered a reduction in broker compensation as a method to "encourage[e] producers to avoid selling their products" and thereby was restricting access to the MA plans.

17. DOI then sought to establish "rules" for the insurance carriers by stating that:

To maintain fair competition in these markets, carriers *must*:

- Make available and easily accessible their applications for enrollment in all forms, including printed, on-line on their website, and through their appointed agents;
- Not engage in convincing or suggesting their products not be sold, marketed or discouraging enrollment;
- Not change compensation or commissions mid-year.
- Provide compensation or commissions if the product they filed had built compensation into its rate development.

*State of Idaho Dep't of Insurance*, Bulletin No. 25-06, October 15, 2025.

18. On November 5, 2025, DOI sent a Cease-and-Desist Letter ("C&D Order") claiming PCHP "is deliberately manipulating the insurance market by disincentivizing agents from selling MA plans by making enrollment and applications unavailable and by refusing to pay commissions that are being paid by the agents' clients."

COMPLAINT FOR DECLARATORY JUDGMENT - 4

19. The C&D Order stated that its terms were immediately enforceable and any appeal or reconsideration of the C&D would not stay the effectiveness of the C&D Order.

20. PCHP suffers immediate and irreparable harm as a result of the DOI's attempt to assert jurisdiction over the marketing and administration of PCHP's MA products in the State of Idaho as such regulatory overreach not only subjects PCHP to conflicting direction between state and federal regulatory authorities, but also immediately impacts PCHP ability to act with fiscal responsibility to ensure sufficient reserves to meet the claims of the eligible seniors who elected an MA plan offered by PCHP.

## FIRST CLAIM FOR RELIEF
## DECLARATORY JUDGMENT

21. PCHP hereby re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

22. There exists an actual, justiciable controversy between PCHP and the Defendant with regard to the enforceability of the C&D Order.

23. PCHP is entitled to declaratory relief that the C&D Order is unenforceable as the matters addressed in the C&D Order are subject to federal preemption.

## PRAYER FOR RELIEF

WHEREFORE, PCHP prays for entry of an order and judgment against Defendant as follows:

1. A Declaratory Judgment that Defendant's attempt to regulate the marketing of MA Plans generally, and broker compensation agreements specifically, is preempted by federal law.

2. A Declaratory Judgment that the C&D Order is null and void.

3. An order enjoining the Defendant from enforcing the C&D Order.

COMPLAINT FOR DECLARATORY JUDGMENT - 5

4. An award of attorneys' fees and costs.

5. Any other relief that the Court deems just and proper

DATED this 6th day of November, 2025.

JONES WILLIAMS FUHRMAN GOURLEY, P.A.

   /s/ Daniel Loras Glynn
   Daniel Loras Glynn
   Attorney for Plaintiff

COMPLAINT FOR DECLARATORY JUDGMENT - 6