UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PACIFICSOURCE COMMUNITY HEALTH PLANS, an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>DEAN L. CAMERON, in his official capacity as Director of the Idaho Department of Insurance,<br><br>Defendant. | Case No. 1:25-cv-00638-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are Plaintiff PacificSource Community Health Plans's ("PCHP") Motions for Temporary Restraining Order (Dkt. 2) and for an Expedited Hearing (Dkt. 6).[1] Defendant Dean Cameron, as Director of the Idaho Department of Insurance ("the Director"), initiated administrative enforcement proceedings against PCHP because PCHP allegedly attempted to prevent consumers from enrolling in its Medicare Advantage plans in violation of Idaho law. PCHP seeks a temporary restraining order to enjoin the Director's enforcement action because federal law preempts Idaho law as to the Director's enforcement actions. Because the Court finds PCHP has met its burden, and for the reasons stated more fully below, the Court GRANTS the Motions.

---

[1] Upon review, the Court finds the arguments adequately presented. In the interest of time and judicial efficiency, the Court dispenses with oral argument. *See* Local Rule 7.1.

## II. BACKGROUND

PCHP is an insurer which offers Medicare Advantage insurance plans ("MA plans"). Like traditional Medicare, Medicare Advantage plans offer health insurance at reduced rates to senior citizens. Unlike traditional Medicare, however, MA plans are offered through private insurers like PCHP. Such insurers are called "MA organizations."

New customers can sign up for MA plans through Medicare.gov, by contacting the MA organization directly, or (as relevant here) through insurance brokerages. MA organizations typically pay brokers commissions to incentivize the broker to refer potential beneficiaries to the MA organization. Congress has directed the Secretary of Health and Human Services, acting through the Centers for Medicare and Medicaid Services ("CMS"), to regulate the compensation MA organizations pay brokers. 42 U.S.C. § 1395w-21(j)(2)(D); 42 C.F.R. § 422.2274. CMS has set a ceiling on the amounts MA organizations can pay brokers, but it has not set a floor. *See* 42 C.F.R. § 422.2274(d).

In October 2025, PCHP notified its brokers that it intended to reduce its brokerage commissions. Dkt. 2-1, at 5. The Director alleges that PCHP did much more than merely reduce commissions. Allegedly, "[s]everal agents notified the [Director] that PCHP notified them that PCHP did not want to sell any MA plans, and to artificially curtail the sale of those plans, they were making some MA plans non-commissionable to disincentivize agents." Dkt. 8, at 3. Among the plans PCHP allegedly made non-commissionable were plans where the brokerage commissions had been used to calculate the premium, meaning that PCHP allegedly passed the cost of brokerage commissions on to Idaho beneficiaries— only to keep the value of the commission for itself. Dkt. 8-1, at ¶¶ 5–7.

The Director further alleges that PCHP attempted to prevent consumers from enrolling in its plans in other ways.

The Director responded to complaints against PCHP (and similar other MA organizations) by issuing Bulletin No. 25-06. The Bulletin stated that MA organizations which discouraged or impeded consumers from enrolling in their MA plans engaged in unfair competition under Idaho Code § 41-1321. The Bulletin listed several activities which the Director believed violate Idaho law. Dkt. 2-2, at 34–35.

The Director then opened an investigation into PCHP. Two weeks later,[2] the Director issued PCHP a cease-and-desist order (the "Order"). The Order notified PCHP that it had violated Idaho Code § 41-1321 and directed PCHP to cease and desist from concealing its MA plans or limiting broker compensation. Dkt. 2-2, at 42. The Order stated that PCHP may seek reconsideration or judicial review of the Order, but it could not obtain a stay of the Order without the Director's approval. Dkt. 2-2, at 42–45. Based on informal discussions with the parties, the Court understands PCHP sought a stay from the Director and that request has been denied.

PCHP filed this suit on November 6, 2025, seeking a declaration that federal law preempts Idaho Code § 41-1321 as applied to MA organizations. Dkt. 1. The same day, PCHP moved for a temporary restraining order and preliminary injunction to prohibit the Director from proceeding with his enforcement action until this Court resolves the

---

[2] The Director initially issued the Cease and Desist Order on October 29, 2025. Dkt. 2-2, at 1 n.1. That order was issued to the wrong PacificSource entity. *Id.* The Director issued an Amended Order on November 5, 2025, which was identical to the October 29 order except in that it correctly listed PCHP as the respondent.

preemption issue. Dkt. 2. Six days later, PCHP moved to expedite consideration of the Motion for Temporary Restraining Order. Dkt. 6. The Director responded to the Motion to Expedite on November 12 and the Motion for Temporary Restraining Order on November 21. Dkts. 7; 8. The Director denies that federal law preempts its enforcement action and argues PCHP lacks a cause of action to bring its Complaint.

The Director also moved to dismiss PCHP's Complaint. Dkt. 9. Because the Director's defenses hinge in part on the Motion to Dismiss, and because the Court will consolidate briefing and hearings on the Motion to Dismiss with the Temporary Restraining Order entered today, the Motion will be discussed in passing. In pertinent part, the Director argues the Court should exercise its discretion to abstain under *Younger* until the pending state enforcement action concludes.

In the interest of time, the Court elects to decide the Motion for Temporary Restraining Order without the benefit of reply briefing. The matter is, therefore, ripe for review.

### III. LEGAL STANDARD

#### A. Declaratory Judgment

Congress has granted federal courts the ability to issue declaratory relief. 28 U.S.C. § 2201. Declaratory relief is a remedy rather than a right. *Siino v. Foresters Life Ins. & Annuity Co.*, 133 F.4th 936, 945 (9th Cir. 2025). "[T]he Declaratory Judgment Act does not provide an affirmative cause of action where none otherwise exists." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022). Thus, a party seeking declaratory relief must point to an underlying legal controversy between the parties which gives rise to a colorable cause

of action. "A potential defendant may preempt a suit by a potential plaintiff—the latter of whom could sue pursuant to an independent cause of action—and seek a declaration that the potential plaintiff's claim would fail." *Id.* at 879. "The potential defendant in effect borrows the underlying cause of action that would be available to the potential plaintiff." *Id.*

### B. Temporary Restraining Order

"The purpose of a temporary restraining order is to preserve an existing situation *in statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *W. Watersheds Project v. Bernhardt*, 391 F. Supp. 3d 1002, 1008 (D. Or. 2019) (cleaned up). A plaintiff seeking a temporary restraining order ("TRO") "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *CTIA-The Wireless Ass'n v. City of Berkeley*, 854 F.3d 1105, 1114 (9th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (explaining the standard for a preliminary injunction and temporary restraining order are the same). "Likelihood of success on the merits is the most important factor." *Fraihat v. United States Immigration & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021).

The Ninth Circuit applies the *Winter* factors on a sliding scale. A party that cannot show a likelihood of success on the merits may nonetheless obtain temporary relief "if there are serious questions going to the merits; there is a likelihood of irreparable injury to

MEMORANDUM DECISION AND ORDER - 5

the plaintiff; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *Villegas Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

## IV. DISCUSSION

The parties disagree as to whether the Medicare Advantage preemption statute covers the Director's regulatory action. Because the Court finds PCHP is likely to succeed in arguing that it does, the Court GRANTS the Motion for Temporary Restraining Order. But because such an Order implicates serious comity interests, the Court also GRANTS the Motion to Expedite.

### A. Motion for Temporary Restraining Order

PCHP argues that the Medicare Advantage preemption statute, 42 U.S.C. § 1395w-26(b)(3), preempts Idaho from regulating MA organizations as outlined in the Bulletin and Order.

*1. Likelihood of Success on the Merits*

The Medicare Advantage preemption statute reads: "The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." 42 U.S.C. § 1395w-26(b)(3). "[A] 'standard' within the meaning of the preemption provision is a statutory provision or a regulation promulgated under the Act and published in the Code of Federal Regulations." *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1148 n.20 (9th Cir. 2010). Section 1395w-26(b)(3) is exceedingly broad. If the federal standard regulates in the same domain as state law—even if the state law is consistent with the federal standard, and even if the state law is generally

applicable—the state regulation is preempted. *Aylward v. SelectHealth, Inc.*, 35 F.4th 673, 681 (9th Cir. 2022).

Determining whether the Director's actions are preempted, then, requires a two-step analysis. First, the Court must determine what conduct the Director seeks to regulate. Second, the Court must determine whether a standard (i.e. a federal statute or codified regulation) covers the same conduct. If the state regulation and federal standard cover the same conduct, the Court must find the state regulation preempted.

The Director argues that PCHP has engaged in unfair trade practices by removing the enrollment application from its website to conceal the MA plan from consumers and by altering its contracts with agents to withhold commissions. Dkt. 2-2, at 42. PCHP argues that two federal standards preempt Idaho Code title 41 chapter 13: 42 C.F.R. § 422.2261–62, which concerns MA plan marketing, and 42 C.F.R. § 422.2274, which governs broker compensation.

42 C.F.R. § 422.2261 requires MA organizations to submit marketing materials to CMS for approval and to certify compliance with 42 C.F.R. § 422.2260–67. The regulations further specify rules regarding the content and intelligibility of MA plan marketing materials (42 C.F.R. § 422.2262) as well as the required content of websites (42 C.F.R. § 422.2265(b)) and requirements for the manner and form of distributing, inter alia, the enrollment form (42 C.F.R. § 422.2267).

PCHP is likely to succeed in arguing that the requirements of 42 C.F.R. § 422.2260–67 regulate the same domain as Idaho law with respect to the delivery and clarity of enrollment materials. PCHP argues that 42 C.F.R. § 422.2261 regulates marketing, and the

Director's complaints regarding its removal of the digital enrollment application concern its marketing practices. The Director argues that prohibiting PCHP from removing its enrollment form from the website is not a "marketing practice" regulated by §§ 422.2261–62. Even if the Court agrees with the Director that §§ 422.2261–62 do not clearly regulate PCHP's decision to remove its digital enrollment form, other sections within part 422 (and incorporated into 42 C.F.R. § 422.2261 by reference[3]) still preempt the Director's actions.

42 C.F.R. § 422.2265(b)(8), for instance, requires MA organizations to make certain materials available on a website and requires some of them to be displayed "prominently." And 42 C.F.R. § 422.2267(d) regulates the hard copy and electronic delivery of required materials, including the enrollment form. *See also* 42 C.F.R. § 422.2267(e)(6) (specifying the enrollment form as required materials). Whether PCHP's choice to offer hardcopy-only enrollment forms is conceived of as "marketing" or "website design" or "delivery of required materials," a federal standard exists which regulates that domain. Accordingly, PCHP appears likely to succeed on its argument that if Idaho law prohibits it from removing the enrollment form from its website, Idaho law is preempted.

42 C.F.R. part 422 also regulates the domain of compensation to agents and brokers. 42 C.F.R. § 422.2274. Relevant here, § 422.2274 prohibits the creation of MA organization-agent contracts which have a "direct or indirect effect of creating an incentive that would reasonably be expected to inhibit an agent or broker's ability to objectively

---

[3] *See* 42 C.F.R. § 422.2261(b)(3)(ii); § 422.2261(d)(1).

**MEMORANDUM DECISION AND ORDER - 8**

assess and recommend which plan best fits the health care needs of a beneficiary." 42 C.F.R. § 422.2274(c)(13).

Subsection (c)(13) almost reiterates the Director's concern regarding PCHP: the Director claims terminating broker compensation for certain MA plans violates Idaho unfair competition law because it disincentivizes brokers from recommending PCHP's plans for reasons unrelated to the health care needs of the consumer. Dkt. 2-2, at 41. The regulations appear to be consistent in spirit, but that consistency is irrelevant for the 42 U.S.C. § 1395w-26(b)(3) preemption analysis. *Aylward*, 35 F.4th at 681. What *does* matter is the fact that both regulations cover the same underlying conduct. PCHP is, therefore, likely to succeed in arguing that 42 C.F.R. § 422.2274(c)(13) preempts Idaho law as well.

In addition to challenging PCHP's reading of the Medicare Advantage preemption statute, the Director argues that PCHP cannot succeed on the merits because it lacks a cause of action. Dkt. 8, at 5–8. He construes PCHP as seeking declaratory relief under federal Medicare statutes and points out that Medicare statutes do not give PCHP an independent cause of action. Dkt. 8, at 5. True, but irrelevant.

A defensive declaratory judgment action is a mirror image of an ordinary lawsuit. In typical "coercive" lawsuits, a party with a cause of action sues a party which may be liable. The object of the plaintiff in a coercive lawsuit is to establish the defendant's liability. In a defensive declaratory judgment action, however, the parties' positions are flipped: the party which may be liable sues the party with the cause of action. The defensive declaratory judgment plaintiff seeks a declaration that it is *not* liable. Complaints seeking

defensive declaratory relief "borrow" the cause of action of the hypothetical coercive suit. *Reno*, 52 F.4th at 878.

Here, PCHP anticipates the Director will take further enforcement actions against it via Idaho Code § 41-213 (authorizing the Director to take enforcement actions, including by filing suit in Idaho district court). *See* Dkt. 2-2, at 42. PCHP's declaratory judgment action thus "borrows" the Director's cause of action under Idaho Code § 41-213.[4]

In briefing its Motion to Dismiss, the Director argues PCHP cannot borrow Idaho Code § 41-213 because PCHP seeks declaratory relief offensively rather than defensively. Dkt. 9-1, at 9–10 (citing *Reno*, 52 F.4th at 878). Declaratory relief is offensive when the party with a cause of action seeks a declaration that establishes another's liability. Such a plaintiff must have an independent cause of action. Here, however, PCHP alleges the Director has a cause of action *against it* and seeks a declaration that it is *not liable*. *See generally* Dkt. 1. PCHP's suit is, therefore, defensive.

This Order is issued in a preliminary posture, and the Court may revise or abandon its reasoning as further briefing and prudence requires. But at this juncture, PCHP appears likely to succeed on the merits of its preemption argument. Because likelihood of success

---

[4] Under the well-pleaded complaint rule, federal courts generally lack federal question jurisdiction over complaints for declaratory relief which borrow a state cause of action and raise federal law only as a defense. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). However, the Supreme Court has recognized a limited exception to the well-pleaded complaint rule: a complaint for declaratory relief arises under federal law within the meaning of 28 U.S.C. § 1331 when a regulated entity seeks a declaration against state officials that a state regulation is federally preempted. *See California Shock Trauma Air Rescue v. State Comp. Ins. Fund*, 636 F.3d 538, 543 (9th Cir. 2011) (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983)). While the Supremacy Clause does not create an independent cause of action, *see Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015), it does allow a declaration to borrow a state cause of action and still arise under federal law based on the preemption defense.

**MEMORANDUM DECISION AND ORDER - 10**

on the merits is the "most important factor" in determining whether to issue a TRO, *Fraihat*, 16 F.4th at 635, this fact weighs heavily in favor of granting the TRO.

*2. Irreparable Harm*

The second *Winter* factor is irreparable harm. Like an injunction, a TRO is an equitable remedy and will not issue if the plaintiff has an adequate remedy at law. *See Winter*, 555 U.S. at 22. In addition to being irreparable, the threatened harm must be sufficiently imminent to justify an award of emergency relief. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674–75 (9th Cir. 1988). Here, PCHP is threatened with the allegation that it is violating Idaho law on fair competition, laws it can colorably claim do not apply to it. The resulting threat to its business reputation is an intangible harm that cannot be estimated or remedied after the fact. *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057–58 (9th Cir. 2009). Moreover, the Order demonstrates the threat of loss of business reputation is sufficiently imminent to justify emergency relief. The Court accordingly finds irreparable harm here.

*3. Balance of the Equities and the Public Interest*

Finally, PCHP must show that the balance of equities and the public interest favor temporary relief. *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023). Ordinarily these factors are analyzed separately, but where a government entity opposes the relief, the balance of the equities and public interest merge. *Id.* This prong is the closest to tipping in the Director's favor. Promoting fair and accessible market activity is in the interest of the people of Idaho. Nonetheless, the federal public interest in a nationally consistent regulatory scheme for MA plans—and the

MEMORANDUM DECISION AND ORDER - 11

Constitutional interest in upholding the Supremacy Clause—supersedes the Director's interest. *Am. Trucking Assoc's*, 559 F.3d at 1059–60. Because PCHP appears likely to succeed on its preemption claim, and because the public interest supports maintaining the Constitutional scheme of federal supremacy, the balance of the equities and public interest support temporary relief here.

Because the Court finds that PCHP has met each of the *Winter* factors, the Court GRANTS the Motion for Temporary Restraining Order as detailed below.

### B.  Additional Matters

Three concerns remain: the Director's request for an injunction bond, the Motion to Expedite, and the arguments raised by the Director's pending Motion to Dismiss.

First, the Director seeks an injunction bond consistent with Fed. R. Civ. P. 65. The Court, therefore, orders PCHP to give security in the amount of $5,000. PCHP shall tender security to the Clerk of the Court within three business days of the date of this Order.

Second, this Order enjoins, albeit temporarily, the business of a state agency. The Court wishes to minimize this Order's impact on Idaho's sovereignty. Therefore, the temporary restraining order extends only to the dispute between the Director and PCHP. *See generally Labrador v. Poe*, 144 S. Ct. 921, 923 (2024) (advising lower courts to tailor any emergency relief to the parties who brought the suit and to the specifics of the challenged law). And to enable the Director to timely object to the continuation of this temporary restraining order, the Court GRANTS the Motion to Expedite. A scheduling order will issue following the entry of this Order.

Finally, the Court notes that the Director's *Younger* abstention argument, raised in his Motion to Dismiss, remains unresolved. While the Court today finds that PCHP is likely to succeed on the merits, the Court has not yet determined whether it will reach the merits in the first place. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013). Accordingly, the Court expedites consideration of the Director's Motion to Dismiss and consolidates it with the hearing on the Motion for Temporary Restraining Order.

## V. CONCLUSION

Medicare law is famously intricate, and this case appears to be no exception. In such circumstances it is appropriate to preserve the status quo until, with the benefit of briefing and a hearing, the Court can give the parties' arguments due consideration.

## VI. ORDER

**IT IS THEREFORE ORDERED:**

1. PCHP's Motion for Temporary Restraining Order (Dkt. 2) is GRANTED.

2. PCHP's Motion to Expedite (Dkt. 6) is GRANTED.

3. PCHP is ORDERED to give security in the amount of $5,000.

4. The Director is ENJOINED, effective upon PCHP giving security, from enforcing Idaho unfair competition law against PCHP in administrative or judicial proceedings based on the interpretations given in the Cease and Desist Order or Bulletin 25-06 pending further order of the Court.

5. A consolidated hearing on the Motion for Temporary Restraining Order and Motion to Dismiss is set for December 18, 2025, at 3:00 PM. A briefing schedule with further details will issue following the entry of this Order.

DATED: December 4, 2025

David C. Nye
Chief U.S. District Court Judge