DANIEL LORAS GLYNN, ISB #5113
SUSAN E. HUNT, ISB #12208
JONES • WILLIAMS • FUHRMAN • GOURLEY, P.A.
The 9th & Idaho Center
225 N. 9th Street, Suite 820
PO Box 1097
Boise, ID 83701
Telephone: (208) 331-1170
Facsimile: (208) 331-1529
dglynn@idalaw.com
shunt@idalaw.com

*Attorneys for the Plaintiff PacificSource Community Health Plans*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PACIFICSOURCE COMMUNITY HEALTH PLANS, an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>DEAN L. CAMERON, in his professional capacity as Director of the IDAHO DEPARTMENT OF INSURANCE,<br><br>Defendant. | Case No.  1:25-cv-00638-DCN<br><br>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS AS FILED ON NOVEMBER 21, 2025 [DKT. 9] |

     The relevant federal statute which sets forth the Medicare Advantage program's "relation to State laws," clearly, expressly and unequivocally provides that the federal law and federal regulations governing MA plans "shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS AS FILED ON NOVEMBER 21, 2025 [DKT. 9] - 1

by MA organizations…" 42 U.S.C. §1395w-26(b)(3). Despite the undeniable presence of this express preemption clause in the Federal Medicare law, the Idaho Department of Insurance ("DOI") makes only a single, passing reference to this statute in its Memorandum in Support of Motion to Dismiss ("MIS"). Ignoring the breadth of this preemption clause, the DOI boldly asserts that it is the entity which possesses wide-sweeping jurisdiction to regulate the actions of insurers like Pacific Source Community Health Plans ("PCHP") which offer MA plans within the State of Idaho. In so doing, the DOI appoints itself as the final authority in the regulation of MA organizations and, as such, can ignore and/or override the determinations of the Federal Center for Medicare and Medicaid Services ("CMS") – the very federal agency that is expressly charged with the responsibility of annually approving these subject matters as concerns MA organizations like PCHP. *See* 42 C.F.R. 422.2261.

Not only does the DOI seek to hold itself exempt from Federal law, it urges this Court to adopt a legal position which, if accepted, would not only strip the CMS of its jurisdiction to regulate the marketing activities of MA organizations, but would strip this Court of its own jurisdiction in all cases to address issues of federal supremacy and preemption. According to the DOI, this Court has no jurisdiction to address PCHP's preemption arguments unless and until PCHP exhausts its administrative remedies before the DOI. (MIS at page 3–6.) Paradoxically, the DOI then asserts that by exhausting its administrative remedies before the DOI that PCHP is thereby foreclosed from bringing a federal action to challenge the state agency action. Perhaps even more shocking, the DOI also asserts that this Court disregard long established United States Supreme Court precedent recognizing this Court's jurisdiction to address issues of federal law preemption through a declaratory judgment action.

In sum, the DOI's position is a perfect example of the application of the legal principle of *ipsi dixit*. The DOI asserts that it has the legal authority to engage in whatever action it chooses and only it has the jurisdiction to determine whether it possesses that legal authority. This Court should reject the arguments of the DOI, affirm this Court's jurisdiction to determine matters of federal preemption, and ultimately find the DOI's actions to be an unlawful exercise of power in matters that are exclusively reserved to the Federal government generally and CMS specifically.

## ARGUMENT

**A.  This Court Should Reject DOI's Argument Regarding an Alleged Failure to Exhaust Administrative Remedies**.

The DOI initially urges this Court to dismiss PCHP's action on the basis that PCHP has failed to fully exhaust its administrative remedies before the DOI with respect to the Amended Cease-and-Desist Order ("Amended C&D") which was issued on November 5, 2025. The DOI's arguments should be rejected for two reasons as identified below.

**1.  Where the Controversy is Based on the Application of Federal Preemption Principles a Party Need Not Exhaust its Administrative Remedies.**

First, where a complaint is grounded on federal preemption a plaintiff need not exhaust all available administrative remedies. This legal principle was long ago recognized by the United States Supreme Court in the case of *PUC of California v. United States*, 355 U.S. 534, 539, 78 S. Ct. 446, 450 (1958). At issue in that case was the action of the California Public Utilities Commission which had sought to impose a rate structure for the transportation of federal government property across California state lines. However, this action of the California PUC was in contravention of the established rates that the United States Department of Defense had already negotiated for transportation of its property. When the United States Department of Defense sought to challenge the constitutionality of the California PUC's action, the California PUC

asserted that the United States Department of Defense claim was barred by its failure to exhaust its administrative remedies before the California PUC with regard to the rate structure it had sought to impose. The United States Supreme Court rejected this argument.

In so doing, the Court recognized that as a general rule an aggrieved party should pursue its administrative remedies before the state agency before initiating an action in federal court "so that the true interpretation of the state law may be known and its actual, as opposed to its theoretical, impact on the litigant authoritatively determined before the federal court undertakes to sit in judgment." *Id.,* 355 U.S. at 539, 78 S. Ct. at 450. However, where there is no doubt about the state actor's intent to intrude upon a matter of federal jurisdiction such issue is a "constitutional one that the Commission can hardly be expected to entertain." *Id.* Thus, "where the only question is whether it is constitutional to fasten the administrative procedure onto the litigant, the administrative agency may be defied and judicial relief sought as the only effective way of protecting the asserted constitutional right." *Id.,* 355 U.S at 540, 78 S. Ct. at 450-51. *See also, Wang v. Reno*, 81 F.3d 808, 816 (9th Cir. 1996) (recognizing that exhaustion of administrative remedies is not required where such does not serve the its underlying purpose and the constitutional question is clear); *Gete v. INS*, 121 F.3d 1285, 1291 (9th Cir. 1997) (recognizing that a challenge to an agency's procedures on constitutional grounds may properly be brought in federal court and the requirement of exhaustion of administrative remedies is waived when such proceeding is a wholly arbitrary and unfair process that strips the party of all of his constitutional rights); *Channel One Sys., Inc. v. Conn. Dep't of Pub. Util. Control,* 639 F. Supp. 188, 196-97 (D. Conn. 1986) (plaintiff "need not exhaust all available administrative remedies before seeking relief in this court when a controversy is found to exist and a complaint is grounded on federal preemption.").

The present action is squarely within the exception recognized in *PUC of California.* Like the state commission in *PUC of California*, the Amended C&D purports to require PCHP to provide defined compensation rates to contracting brokers and to market its MA products in a specific manner, both of which have already been approved by CMS under the authority given to it by the Medicare Act. *See* 42 C.F.R. 422.2261.  Thus, there is no question that the actions of the DOI intrude upon matters which are subject to federal preemption and, as such, there is no reason that PCHP should be required to engage in the administrative proceedings before the DOI.

### 2.  PCHP has Exhausted its Administrative Remedies Before the DOI.

An additional reason why the DOI's arguments in this regard should be rejected is the fact that PCHP has now exhausted such remedies, rendering the DOI's assertion in this regard moot. As the DOI recognizes in its MIS, PCHP did, in fact, engage in the administrative process with the DOI by the filing of a motion for reconsideration of the Amended C&D. (MIS at page 4.) PCHP did so as it found itself caught between the recognition of DOI's overreach into matters preempted by the Medicare law and the fact, as also acknowledged by DOI in its MIS, that its Amended C&D purported to be a final order immediately enforceable with no ability for PCHP to stay such action before the DOI. It is for this reason that PCHP sought injunctive relief with this Court as a means to protect itself from the irreparable harm to be suffered by PCHP while affording the DOI an opportunity, as recognized in *PUC of California*, to remove the constitutional question presented by retracting the Amended C&D based on the presented arguments of federal preemption.

Unfortunately, the DOI not only refused to retract the Amended C&D based on the federal preemption arguments but refused to address PCHP's arguments at all.  As noted in the DOI's MIS, Idaho Code Section 67-5246(4) provides that upon a motion for reconsideration of a final administrative order, the agency head shall dispose of the motion within twenty-one (21) days. By

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS AS FILED ON NOVEMBER 21, 2025 [DKT. 9] - 5

statute "the petition is deemed denied if the agency head does not dispose of it within twenty-one (21) days after filing of the petition." The DOI took no action whatsoever on PCHP's motion for reconsideration demonstrating not only the futility of the pursuit of an administrative process before the DOI but leaving no room for doubt by this Court as to DOI's position and hence its ripeness before the Court. *See, Bowen v. New York,* 476 U.S. 467, 485, 106 S. Ct. 2022, 2033 (1986) (requirement to exhaust administrative remedies is waived when such process would be futile and there was nothing to be gained from permitting the compilation of a detailed factual record or from agency expertise); *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987) (party not required to exhaust administrative remedy where such would not serve the policies underlying exhaustion as "[g]iven the constitutional nature of his challenge, 'there was nothing to be gained from permitting the compilation of a detailed factual record, or from agency expertise.'").

As was recognized by the Ninth Circuit, one of the underlying principles favoring exhaustion of administrative remedies is it "allows the agency to compile a detailed factual record and apply agency expertise in administering its own regulations" which serves the twofold purpose of giving the agency an opportunity to correct its own error and conserve judicial resources through a more complete record. *Johnson v. Shalala*, 2 F.3d 918, 922 (9th Cir. 1993). However, such action is appropriately considered futile and the requirement of exhaustion is waived when a factual record does not aid what is otherwise a straightforward statutory challenge. *Id.*

PCHP engaged in what ultimately proved to be an exercise in futility. PCHP sought to engage the DOI in a dialogue concerning the exercise of the DOI's purported authority in the face of federal preemption and the express prior approval of PCHP's marketing activities by CMS.[1]

---

[1] Rather than engaging PCHP in a dialogue, the DOI considered simply staying the administrative process, but not the enforcement of its Amended C&D, entirely pending these federal proceedings. Fortunately, the Director ultimately determined not to stay the proceeding.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS AS FILED ON NOVEMBER 21, 2025 [DKT. 9] - 6

The result of PCHP's engagement in the administrative remedies presented by DOI was silence and the consequent continued enforcement of the DOI's Amended C&D through subsequently initiated contempt proceedings. *See,* Supplemental Declaration of Jim Havens in Support of Motion for Temporary Restraining Order and Preliminary Injunction, Exhibit A [Dkt. 11-1]. Regardless, PCHP has now exhausted the administrative process before the DOI thereby rendering the DOI's arguments in this regard moot.

In sum, this Court should reject the DOI's arguments seeking dismissal based on a the argument that PCHP was required to exhaust its administrative remedies before the DOI as (1) PCHP was not required to engage such process in the first place given the presence of federal preemption, (2) PCHP's engagement in the administrative process was a futile act such that the defense is waived, and/or (3) PCHP has completed its proceedings before the administrative agency and such defense is now moot.

B.  **PCHP Has Stated a Claim for Federal Preemption Actionable by a Declaratory Judgment Action.**

Alternatively, the DOI makes the curious assertion that PCHP does not have the right to assert a claim for federal preemption because the Medicare law does not contain a cognizable private cause of action which can be pursued through a declaratory judgment action. (MIS at page 6-9.) The DOI's argument has been wholly rejected by the United States Supreme Court.

In *Shaw v. Delta Air Lines*, 463 U.S. 85, 92, 103 S. Ct. 2890, 2897 (1983), Delta Air Lines provided their employees with benefits through ERISA plans which plans did not provide certain pregnancy benefits as otherwise required by New York state law. Accordingly, Delta Air Lines filed a federal declaratory judgment action asserting that the state laws were preempted by ERISA. Recognizing the breadth of EIRSA's preemption of state law concerning employee benefit plans, the United States Supreme Court determined that New York's state law was preempted to the extent

that it prohibited practices that were otherwise lawful under ERISA. *Shaw*, 463 U.S. 85, 108, 103 S. Ct. 2890, 2905 (1983). Of particular note in *Shaw* is the United States Supreme Court's express recognition federal courts have jurisdiction to decide cases of federal preemption. In this regard, the Court stated:

> It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U. S. C. § 1331 to resolve.

*Id.*, 463 U.S. 85, 96 n.14, 103 S. Ct. 2890, 2899 (1983). *See also, Geo Grp., Inc. v. Newsom,* 50 F.4th 745, 757 (9th Cir. 2022) (reversing denial of preliminary injunction sought by federal government as against a state regulation where federal government was likely to prevail on claim that state regulations were preempted by federal law); *United States v. City of Arcata, 629 F.3d 986, 990 (9th Cir. 2010)* (recognizing that the federal government had standing to challenge through declaratory judgment action state regulations which were preempted by federal law).

Of particular note with regard to *Shaw*'s progeny is *Indep. Living Ctr. of S. Cal., Inc. v. Shewry*, 543 F.3d 1050, 1052 (9th Cir. 2008) which involved a declaratory judgment action by a group of pharmacies, health care providers, senior citizen groups and beneficiaries who sought to enjoin California's Director of the Department of Health Care Services from enforcing a 10% reduction in payments to medical providers. These plaintiffs argued that the State of California's actions violated the express provisions of the Medicaid Act and were therefore preempted under the Supremacy Clause. The trial court denied the plaintiff's right for preliminary relief holding that none of the plaintiffs had a private cause of action. The Ninth Circuit reversed the trial court holding that "*Shaw* did not give rise to some unique line of '*Shaw* preemption' cases, but merely reaffirmed the traditional rule that injunctive relief is presumptively available in federal court to

enjoin state officers from implementing a law allegedly preempted under the Supremacy Clause." *Id.,* 543 F.3d at 1057.

Not only did the Ninth Circuit recognize that there was "no doubt" as to the authority of private parties to seek injunctive relief on the basis of federal preemption, the Ninth Circuit also expressly addressed the DOI's argument that in addition to preemption itself the relied upon federal law must also contain a private cause of action. In this regard, the Court stated:

> Although the Director asserts that the express conferral of a 'private right of enforcement' on petitioners is a 'necessary predicate' to a claim for injunctive relief under the Supremacy Clause, the well-established rule in both this court and in other circuits is *precisely the opposite*.

*Id.,* 543 F.3d at 1058 (emphasis added).

These cases affirm PCHP's right to seek injunctive relief before this Court to enjoin the DOI's attempts to provide for regulation of matters that are expressly preempted by the Medicare law. Accordingly, this Court should reject the DOI's arguments in this regard.

**C.     The Rooker-Feldman Doctrine is without Application to the Present Litigation.**

The DOI also asserts that this Court should dismiss PCHP's Complaint on the basis of the *Rooker-Feldman* doctrine. It is this argument where the DOI fully reveals the circularity of its position as it insists that in order for PCHP to seek relief it must first exhaust its administrative remedies but then asserts that once PCHP exhausts its administrative remedy it is barred from seeking relief from this Court. Regardless of this box which the DOI seeks to entrap PCHP and thereby deprive this Court of its otherwise recognized jurisdiction to address such matters, the *Rooker*-*Feldman* Doctrine is not implicated in the case at bar.

The *Rooker*-*Feldman* Doctrine "applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court and seeks as her remedy relief from the state court judgment." *Miroth v. Cnty. of Trinity*, 136 F.4th 1141, 1151 (9th Cir. 2025) (*quoting Kougasian v.*

*TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004)).  Neither element is met here.  PCHP is not seeking relief from a state court judgment. PCHP is seeking relief from an order of the DOI which seeks to regulate matters expressly preempted by the Medicare law and within the exclusive purview of CMS.  PCHP has sought to engage the DOI in a resolution of this issue through the administrative process, a process which the DOI made abundantly clear was a futile effort by its non-response to PCHP's request for reconsideration.  Accordingly, this is not a collateral attack on an otherwise valid judgment or an effort by PCHP to forum shop after receiving an adverse ruling by a state court.  As such, this Court should reject the DOI's assertion of the *Rooker-Feldman* Doctrine as a reason for dismissal of PCHP's Complaint.

**D.      The Younger Abstention Doctrine Does Not Apply in This Case.**

As a final argument against consideration of PCHP's claim against it, the DOI requests this Court abstain from consideration of PCHP's claims based on the *Younger* doctrine. Once again, it is indeed a very telling omission that in its assertion of the *Younger* doctrine the DOI makes no reference whatsoever to the clear and express preemption clause found in the Medicare laws at 42 U.S.C. §1395w-26(b)(3).  Rather, the DOI simply brushes off the presence of this preemption clause and declares that Idaho has "concurrent jurisdiction" over the marketing of MA plans in the State of Idaho.  However, the elements for the *Younger* Doctrine have not been met, and the presence of this express preemption clause not only refutes the DOI's assertion of concurrent jurisdiction, it also warrants the rejection of the *Younger* doctrine.

The *Younger* doctrine "derives from the vital consideration of comity between the state and national governments." *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (2003) (internal quotation marks omitted). However, it is a "fundamental principle that federal courts have an 'unflagging obligation' to exercise their jurisdiction." *Miofsky v. Superior Court of Cal.*, 703 F.2d

332, 338 (9th Cir. 1983). As such, "the doctrine of abstention remains an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Id.* For civil cases, "*Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *Yelp Inc. v. Paxton*, 137 F.4th 944, 950-51 (9th Cir. 2025).

The *Younger* Doctrine is not applicable because the doctrine is far narrower than the DOI argues. In *Sprint v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court identified the basic categories where *Younger* would apply: (1) State criminal prosecutions; (2) Certain civil enforcement proceedings that are akin to criminal prosecution; and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions. 571 U.S. at 80-82. The Court specifically stated that *Younger* "extends to the three 'exceptional circumstances" above and "no further." *Id.* at 82.

In *Sprint*, the telecommunications company sought a declaration that the Telecommunications Act of 1996 preempted efforts by the Iowa Utility Board to govern access fees associated with long distance calling across state lines, specifically as it pertained to internet-based calls. *Id.* at 74. Sprint filed in both state court and federal court, arguing that preemption applied. *Id.* Similar to the case at bar, Sprint did so in order to protect itself during the obligation to exhaust administrative remedies. *Id.* at 75. The appeals court found that there was an "important state interest in regulating and enforcing its intrastate utility rates" and stayed the case during the pendency of state proceedings. *Id.* at 76. The Supreme Court overruled that decision finding that the state proceeding did not resemble the state enforcement actions appropriate for the *Younger* abstention because it was not akin to a criminal prosecution. *Id.* at 80.

The current proceedings are not analogous to a civil enforcement proceeding warranting abstention because the DOI's Amended C&D order lacks the core characteristics required to be a civil enforcement proceeding. The U.S. Supreme Court has clarified that the civil enforcement proceeding applies to actions initiated by the State to sanction a serious violation of state law or ethical standard and have characteristics that make them 'akin to a criminal prosecution". *Id.* at 79-80. That is not the situation we are confronted with in this case. Here, the DOI action is fundamentally an exercise of the state's regulatory power over insurance plans and *not* its prosecutorial power to vindicate the state's public morals or law enforcement interests. The Amended C&D order lacks the kind of high-stakes, coercive discipline one would find in a criminal or disciplinary action and focuses on compliance with state insurance laws. Furthermore, the proceeding was initiated and concluded by the administrative agency and not by a prosecutor or high-level public commission. The Supreme Court warned against an expansive reading in *Sprint* recognizing that divorced from the quasi-criminal context, nearly all parallel state and federal proceedings would have a plausibly identifiable state interest. *Id.* at 81. Critically, the *Sprint* Court stated that federal courts are "obligated to decide cases within the scope of federal jurisdiction" and that abstention is not in order "simply because a pending state-court proceeding involves the same subject matter." *Id*. at 72. Finally, there is no on-going judicial or quasi-judicial state proceeding as the Amended C&D action has concluded. The conditions warranting abstention under *Younger* simply are not present.

Furthermore, the focus in this case must be the assertion of the state's interest upon which the exercise of federal jurisdiction purports to interfere. The DOI argues that it possesses such an interest in the regulation of the marketing of MA products by MA organizations such as PCHP. However, the State's interest is unquestionably trumped by the Medicare law's express preemption

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS AS FILED ON NOVEMBER 21, 2025 [DKT. 9] - 12

of this area. This conclusion is evident from the analysis utilized by the Ninth Circuit in the case of *Champion Int'l Corp. v. Brown*, 731 F.2d 1406, 1407 (9th Cir. 1984). In that case, Champion possessed a pension plan that provided for no credited service for the time a retiree worked after he or she reached the age of 65, a provision which was in compliance with ERISA and the treasury regulations interpreting it. The State of Montana asserted that Champion violated Montana's age discrimination laws. Champion sought injunctive and declaratory relief in federal court asserting that the State of Montana's action were preempted by ERISA.

Like the DOI here, the State of Montana asserted that the *Younger* abstention doctrine warranted the dismissal of the federal action. The district court agreed. However, the Ninth Circuit reversed the dismissal of the federal action. Again, noting that *Shaw* recognized the right of a plaintiff to enjoin enforcement of an order on the basis of preemption, the court affirmed its jurisdiction to address the controversy. *Id.*, 731 F.2d at 1408. Recognizing that "[a]ll refusals to abstain involve some potential interference in those processes," the Court further noted that the claimed interference must be "substantial." *Id.* In this regard, the Ninth Circuit did not agree that Montana's interest in enforcing its state law against age discrimination justified abstention. Rather, the Ninth Circuit noted the preemption clause in the ERISA statutes and based on such held that "Montana has no cognizable state interest in enforcing those age discrimination laws that are preempted by federal law." *Id.*, 731 F.2d at 1409. *See also, Baggett v. Dep't of Prof'l Regulation, Bd. of Pilot Comm'rs,* 717 F.2d 521, 524 (11th Cir. 1983) (holding that "[w]hen preemption is readily apparent, however, and, because of preemption, the state tribunal is acting beyond the lawful limits of its authority, abstention can serve no principle of comity or of 'our federalism.'"). In so holding, the Ninth Circuit recognized that strong policy reasons supported the decision to refuse abstention as it was evident that the preemption clause was intended to save employers from

conflicting and inconsistent state and local regulation. The very same concern that is possessed by PCHP and the reason for the instant proceedings.

42 U.S.C. §1395w-26(b)(3) clearly and unequivocally provides that the Medicare law "shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations…" This preemption encompasses the approval of all marketing activities of MA organizations such as PCHP. 42 C.F.R. 422.2261. It is readily apparent that the DOI's attempts to prohibit activities which are permitted by CMS is an unlawful intrusion upon matters of exclusive federal interest.

As such the DOI has no significant interest to protect and the *Younger* abstention doctrine is without application in these proceedings.

## CONCLUSION

PCHP's marketing of MA products in the State of Idaho is in full compliance with the Medicare law and the prior express approval of CMS. The DOI's effort to direct otherwise and in contravention of the express preemption clause creates PCHP's right to seek relief from this Court to enjoin such activities. For the reasons stated herein, this Court should deny the DOI's Motion to Dismiss. [Dkt. 9]

DATED this 8th day of December 2025.

JONES WILLIAMS FUHRMAN GOURLEY, P.A.

*/s/ Daniel Loras Glynn*
Daniel Loras Glynn
Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 8th day of December, 2025, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected in the Notice of Electronic Filing

    Matt K. Steen, ISB No. 10285
    Idaho Department of Insurance
    P.O. Box 83720
    Boise, Idaho 83720-0043
    (208) 334-4204
    Matt.steen@doi.idaho.gov

    Raúl Labrador
    Idaho Attorney General
    P.O. Box 83720
    Boise, Idaho 83720-0010
    (208) 334-2400
    aglabrador@ag.idaho.gov

                                                   */s/ Daniel Loras Glynn*
                                                   Daniel Loras Glynn