UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PACIFICSOURCE COMMUNITY HEALTH PLANS, an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>DEAN L. CAMERON, in his official capacity as Director of the Idaho Department of Insurance,<br><br>Defendant. | Case No. 1:25-cv-00638-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are three motions. Plaintiff PacificSource Community Health Plans ("PCHP") seeks to preliminarily enjoin an administrative action of the Director of the Idaho Department of Insurance ("the Director"). Dkt. 2. The Director has moved to dismiss PCHP's Complaint, Dkt. 9, and to strike portions of PCHP's opposing memorandum, Dkt. 21. The Court conducted a consolidated hearing with the factually-related Case No. 1:25-cv-00665-DCN, *UnitedHealthcare of the Rockies v. Cameron* ("the UHC case") on January 15, 2026. Dkt. 25. Upon review, and for the reasons which follow, the Court GRANTS PCHP's Motion for Temporary Restraining Order and DENIES the Director's Motions to Dismiss and to Strike.

## II. BACKGROUND

PCHP is an "MA organization;" that is, it is a specialized insurer offering Medicare Advantage insurance plans ("MA plans"). *See* 42 C.F.R. § 422.2. Like traditional Medicare,

MA plans offer federally subsidized health insurance to senior citizens. Unlike traditional Medicare, however, MA plans are offered through private insurers.

New customers can sign up for MA plans through Medicare.gov, by contacting the MA organization directly, or through insurance brokerages. To incentivize brokers to send new business their way, MA organizations (like most insurers) typically pay brokers a commission for directing customers to their plans. Congress has directed the Secretary of Health and Human Services, acting through the Centers for Medicare and Medicaid Services ("CMS"), to regulate the compensation MA organizations pay brokers. 42 U.S.C. § 1395w-21(j)(2)(D); 42 C.F.R. § 422.2274. CMS has set a ceiling on the amounts MA organizations can pay brokers, but it has not set a floor. *See* 42 C.F.R. § 422.2274(d) (*see also* UHC Dkt. 13 (CMS position paper noting that MA organizations may set brokerage commissions at $0)).

In theory, Medicare Advantage leverages the power of the free market to give senior citizens better and more flexible insurance options when compared to traditional Medicare. Yet its quasi-public character creates conflicting regulatory interests. The federal government has an interest in ensuring that Medicare is substantially the same across the country—whether delivered through traditional Medicare plans or MA plans. But states have an interest in protecting their residents from unscrupulous private insurers, whether the insurer offers traditional marketplace plans or MA plans.

PCHP's case, along with the UHC case, place that conflict at the fore. The Director believes PCHP and the plaintiffs in the UHC case are manipulating brokerage fees and marketing practices to discourage new enrollments. PCHP, meanwhile, argues Congress

MEMORANDUM DECISION AND ORDER - 2

has expressly preempted the Director's attempts to regulate its brokerage and marketing decisions.

Prior to open enrollment for 2026, PCHP notified its brokers that it would not offer them commissions on their Idaho MA plans during the 2026 plan year. Dkt. 2-1, at 4–5. The Director maintains PCHP changed its commission structure as part of a holistic attempt to discourage enrollment in its MA Plans. Dkt. 2-2, at 37–45; 8, at 3.

The Director responded to complaints against PCHP and other MA organizations by issuing Bulletin No. 25-06. The Bulletin states that MA organizations which discouraged or impeded consumers from enrolling in their MA plans engaged in unfair competition under Idaho Code § 41-1321. The Bulletin listed several activities which the Director believed violate Idaho law. Dkt. 2-2, at 34–35.

On October 21, 2025, the Director sent an inquiry to PCHP's sister entity, PacificSource Health Plans. Dkt. 2-1, at 6. On November 17, 2025, the Director filed an administrative complaint against PCHP for failing to comply with the inquiry (even though, PCHP maintains, it was never properly served with an inquiry itself). Dkt. 16-5.

On November 5, 2025, (after the Director submitted inquiries to UHC and PacificSource Health Plans, but before he opened the administrative enforcement actions) the Director issued PCHP a cease-and-desist order (the "Order"). The Order notified PCHP that they had violated Idaho Code § 41-1321 by indirectly discouraging Idaho consumers from enrolling in its plans. Dkt. 2-2, at 41.

PCHP filed the instant lawsuit on November 6, 2026. Dkt. 1. It sought reconsideration from the Director the same day. Dkt. 2-1, at 6. PCHP asked the Court to

MEMORANDUM DECISION AND ORDER - 3

restrain the Director from enforcing the Order or Bulletin 25-06, arguing the Director's regulation was expressly preempted by 42 U.S.C. § 1395w-26(b)(3). Dkt. 2. The Court agreed, and temporarily restrained the Director from enforcing the Order or Bulletin against PCHP until the Court could determine whether a preliminary injunction was warranted. Dkt. 12.

While the Court was considering PCHP's request for a preliminary injunction, the Director moved to dismiss. Dkt. 9. PCHP responded, Dkt. 15, and the Director replied. Dkt. 20. The Director then moved to strike a portion of PCHP's opposition. Dkt. 21.

Because PCHP and UHC raised substantially identical issues in their motions for preliminary relief, and because the Director opposed both motions for many of the same reasons that he moved to dismiss, the Court ordered a consolidated hearing in both cases together with the Director's motion to strike. UHC Dkt. 12;[1] PCHP Dkts. 23–24. The hearing took place on January 15, 2026. Dkt. 25.

The matters are now ripe for review.

### III. LEGAL STANDARD

**A. Dismissal under 12(b)(1): Lack of Subject Matter Jurisdiction**

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss claims for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The objection that a federal court lacks subject matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment. *Arbaugh*

---

[1] The Court takes judicial notice of proceedings in Case No. 1:25-cv-00665-DCN as matters of record in a case on its own docket. *See* Fed. R. Evid. 201(c); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

*v. Y&H Corp.*, 546 U.S. 500, 506 (2006). "Dismissal for lack of jurisdiction is not warranted to the extent that the complaint pleads facts from which federal jurisdiction clearly may be inferred." *Demarest v. United States*, 718 F.2d 964, 965 (9th Cir. 1983). A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

"[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*

**B. Dismissal under 12(b)(6): Failure to State a Claim**

A complaint should be dismissed under Rule 12(b)(6) if the plaintiff would not be entitled to relief even if the complaint's well-pleaded facts are true and all reasonable inferences are drawn in favor of the plaintiff. *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Factual allegations need not be detailed, but they must be sufficiently plausible "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Only well-pleaded allegations of fact must be assumed true. Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor is the Court "required to accept as true allegations that are

MEMORANDUM DECISION AND ORDER - 5

merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

If the Court grants a motion to dismiss, it should also grant leave to amend unless it is beyond doubt that amendment would be futile. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

### C. Preliminary Injunction

The basic function of a preliminary injunction is to "preserve the status quo ante litem pending a determination of the action on the merits." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). "A preliminary injunction is an extraordinary equitable remedy that is never awarded as of right." *Garcia v. Cnty. of Alameda*, 150 F.4th 1224, 1229 (9th Cir. 2025) (citation modified). "A preliminary injunction . . . should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Fraihat v. U.S. Immigration & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified). A party seeking a preliminary injunction must clearly demonstrate: (1) likelihood of success on the merits; (2) likelihood of irreparable harm absent injunctive relief; (3) that the balance of hardships tips in plaintiff's favor; and (4) that an injunction serves the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

The Ninth Circuit applies the *Winter* factors on a sliding scale. A party that cannot show a likelihood of success on the merits may nonetheless obtain injunctive relief "if there are serious questions going to the merits; there is a likelihood of irreparable injury to the plaintiff; the balance of hardships tips sharply in favor of the plaintiff; and the injunction

MEMORANDUM DECISION AND ORDER - 6

is in the public interest." *Villegas Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). However, "[u]nder *Winter,* plaintiffs must establish that irreparable harm is *likely,* not just possible, in order to obtain a preliminary injunction." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (emphasis original).

### D. Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure allows the court to strike from "any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating spurious issues by dispensing with those issues prior to trial. *Sidney-Vinstein v. A.H. Robins* Co., 697 F.2d 880, 885 (9th Cir. 1983). A defense may be found "insufficient" as a matter of pleading or as a matter of substance. With respect to substantive insufficiency, a motion to strike a defense is proper "when the defense is insufficient as a matter of law." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982). Rule 12(f) motions are "generally regarded with disfavor[.]" *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003); *see also Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991) ("[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."). Whether to grant a motion to strike is within the courts' discretion. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010).

### IV. DISCUSSION

The Director argues the Court should dismiss PCHP's case because it has not

MEMORANDUM DECISION AND ORDER - 7

exhausted its administrative remedies and because the Court should abstain under the doctrine of *Younger v. Harris*. The Court addresses each argument in turn.

## A. Exhaustion of Administrative Remedies

The Director argues PCHP must exhaust its remedies under the Idaho Administrative Procedures Act, Idaho Code Title 67, Chapter 52 ("IAPA"). Because PCHP filed suit before the Director issued a decision on reconsideration, the Director argues PCHP's case is not exhausted and thus cannot be heard in federal court.

The Director characterizes IAPA as a jurisdictional limitation which applies of its own force to PCHP's action. But no federal authority supports the principle that federal courts must apply state exhaustion requirements simply because the plaintiff challenges state administrative action through *Ex parte Young*.

The Director appears to assume that Plaintiffs' action is fundamentally a request for direct judicial review of his Orders and Bulletin. *See* UHC Dkt. 22, at 4–5. But that misunderstands the nature of PCHP's action. PCHP is making an affirmative claim arising under federal law via federal courts' traditional equity powers: "plaintiffs may sue in equity without a congressionally-provided cause of action to prevent an injurious act by a public officer." *Trump v. Cook*, 2026 WL 1855613, at *11 (U.S. June 29, 2026) (citation modified);[2] *accord Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983) ("A plaintiff

---

[2] Based on *Cook* and *Armstrong*, the Court has occasion to clarify its prior holding regarding the availability of declaratory relief. The Director previously objected to PCHP's Complaint on the grounds that it sought a declaration without an independent cause of action. In rejecting that argument, the Court characterized *Shaw* as expressing an exception to the general rule, set down in *Skelly Oil*, that subject-matter jurisdiction over declaratory judgment actions must be evaluated on the face of the well-pleaded complaint in the

(continued)

MEMORANDUM DECISION AND ORDER - 8

who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve."); *Moore v. Urquhart*, 899 F.3d 1094, 1103 (9th Cir. 2018) ("But they are seeking only declaratory and injunctive relief against the Sheriff in his official capacity . . . . To obtain that relief, plaintiffs do not need a statutory cause of action. They can rely on the judge-made cause of action recognized in *Ex parte Young* . . . ."); *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015); *Green Room LLC v. Wyoming*, 157 F.4th 1196 (10th Cir. 2025) (collecting cases).[3]

Plaintiffs' claims thus arise under federal law, not Idaho law. For the Director's exhaustion arguments to find purchase, he must show that some source of federal law

---

coercive action. Dkt. 12, at 10 n.4. So, the Court held, the Director's impending enforcement authority was the coercive action which PCHP could "borrow" through a declaratory judgment action based on its preemption defense. Though convoluted, that may well be correct. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 20 n.20 (1983) (a regulated entity "might have been able to obtain federal jurisdiction under the doctrine applied in some cases that a person subject to a scheme of federal regulation may sue in federal court to enjoin application to him of conflicting state regulations, and a declaratory judgment action by the same person does not necessarily run afoul of the *Skelly Oil* doctrine.").

But there is a doctrinally simpler way to view PCHP's action. Under *Cook*, *Ex parte Young* actions are an independent coercive action. 2026 WL 1855613, at *11. PCHP should not, therefore, be understood as "borrowing" the Director's cause of action so much as seeking declaratory relief to vindicate a cause of action it already has: namely, an implied equitable action under *Ex parte Young. See Lawrence Cnty. v. Lead-Deadwood Sch. Dist. No. 40-1*, 469 U.S. 256, 259 n.6 (1985) (noting that the Eighth Circuit erroneously dismissed an action seeking only a declaration against state officials that state law was federally preempted, citing *Shaw*); *see also* Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."). Because PCHP has an implied cause of action under *Ex parte Young* to argue Idaho's unfair competition law is preempted, it can vindicate that cause of action through declaratory relief. *See also Steffel v. Thompson*, 415 U.S. 452, 465–68 (1974) (noting that a central purpose of the Declaratory Judgment Act was to provide a milder form of relief for *Ex parte Young* actions).

[3] Under *Armstrong*, the implied cause of action in equity is subject to "express and implied statutory limitations." 575 U.S. at 327. Neither party has asked the Court to find that the Medicare Advantage statutes express a Congressional "'intent to foreclose'" implied equitable relief, *see id.* at 328, and the Court declines to address the issue *sua sponte*.

MEMORANDUM DECISION AND ORDER - 9

incorporates IAPA in this case.

The Supreme Court first discussed the relationship between *Ex parte Young* actions and state administrative exhaustion in *Prentis v. Atl. Coast Line Co.*, 211 U.S. 210 (1908) (Holmes, J.). There, a railroad sought to enjoin an order of the Virginia State Corporation Commission from enforcing a railroad rate schedule, on the grounds the rate schedule violated the Fourteenth Amendment. *Id.* at 223. The Supreme Court rejected the idea that a plaintiff must exhaust all state proceedings before seeking relief in federal court.

> It seems to us clear that the appellees were not bound to wait for proceedings brought to enforce the rate and to punish them for departing from it. . . . They are not to be forbidden to try [the] facts before a court of their own choosing, if otherwise competent. 'A state cannot tie up a citizen of another state, having property within its territory invaded by unauthorized acts of its own officers, to suits for redress in its own courts.'

*Id.* at 228 (citing, inter alia, *Ex parte Young*, 209 U.S. 123, 165 (1908)). In particular, the Supreme Court stressed that once administrative proceedings were complete, no legal principle would prevent a federal court from hearing the case. *Id.* at 230.

Nonetheless, the Supreme Court held the railroad's action was premature in that case, since Virginia law gave the Virginia Supreme Court of Appeals authority to decide whether the rates were permissible in the abstract—a legislative or administrative act, but not a judicial one. *Id.* at 287. In doing so, the Court made plain it was adopting a prudential rule based in comity concerns, rather than any belief that Virginia law provided a rule of decision:

> As our decision does not go upon a denial of power to entertain the bills at the present stage, but upon our views as to what is the most proper and orderly course in cases of this sort when practicable, it seems to us that the

MEMORANDUM DECISION AND ORDER - 10

bills should be retained for the present to await the result of the appeals if the companies see fit to take them.

*Id.* at 232.

The Supreme Court reaffirmed *Prentis*'s holding—and its distinction between legislative and judicial remedies—a few years later in *Bacon v. Rutland R. Co.*, 232 U.S. 134 (1914) (Holmes, J.). Justice Holmes, the author of both opinions, emphasized *Prentis* required exhaustion because the Virginia Supreme Court of Appeals "was given legislative powers, and it was held that in the circumstances it was proper, before resorting to the circuit court of the United States, to make sure that the officials of the state would try to establish an unconstitutional rule." *Id.* at 137. That did not mean an appeal to a court was always (or even presumptively) necessary, however. *Prentis*, Holmes wrote, "laid down expressly that at the judicial stage the railroads had a right to resort to the courts of the United States at once." *Id.* at 137.

The Supreme Court has revisited the application of state administrative exhaustion requirements in subsequent cases, and each time it has made clear that state administrative exhaustion requirements are not binding of their own force in federal court. In *Gibson v. Berryhill*, the Court noted that litigants need not exhaust inadequate administrative remedies. 411 U.S. 564, 575 n.14 (1973).[4] And in its most recent case discussing *Prentis*, the Supreme Court reaffirmed the basic distinction: acts are legislative (and thus entitled

---

[4] As *Gibson* noted, exhaustion was likely not required in that case for another reason: § 1983 plaintiffs generally do not need to exhaust administrative remedies before filing in federal court. 411 U.S. at 574; *see also Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982). PCHP does not characterize its challenge as a § 1983 action, however.

MEMORANDUM DECISION AND ORDER - 11

to exhaustion requirement protections) when they involve "making of a rule for the future," and acts are judicial (and need not be exhausted) when they pass "on present or past facts and under laws supposed already to exist." *New Orleans Public Service, Inc. v. Council of City of New Orleans* (*NOPSI*), 491 U.S. 350, 372 (1989) (citing *Prentis*, 211 U.S. at 226).

None of these cases characterized state exhaustion requirements as jurisdictional simply because the state required exhaustion in its own courts. Rather, the Court grounded its administrative exhaustion jurisprudence in "equity, comity, and federalism." *Gibson*, 411 U.S. at 573. That should not be surprising. The jurisdiction of federal courts is a matter of federal law, bounded by Article III and acts of Congress. Federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution." *Cohens v. State of Virginia*, 19 U.S. 264, 404 (1821). 28 U.S.C. § 1331 gives the district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. PCHP's suits fall within that grant because it is challenging the Director's actions under federal law. *Shaw*, 463 U.S. at 96 n.14.  Indeed, if IAPA were read to limit federal jurisdiction in a manner not contemplated by federal law, it would be preempted and void. *See McClellan v. Carland*, 217 U.S. 268, 281 (1910).[5]

So, the fact that PCHP is challenging the Director's action does not mean IAPA *must*

---

[5] Congress can and has required federal courts to observe state exhaustion laws. *See, e.g.*, 42 U.S.C. § 1997e (requiring exhaustion of state administrative remedies before bringing a § 1983 action). And in cases like *NOPSI* and *Younger*, the Supreme Court has limited the timing of federal actions based on state law and state interests. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013). But in both cases, the state exhaustion requirements were incorporated by some source of federal law: Congressional statutes in the former case, and federal common law in the latter.

apply. The question then becomes: do the principles of equity, comity, and federalism announced in *Prentis* and its progeny require the Court to hold this action in abeyance until PCHP exhausts all the remedies IAPA gives it? The answer is no.

Because PCHP has exhausted all administrative remedies—and is not required to exhaust judicial remedies—its suit is not premature. PCHP moved the Director for reconsideration on or before November 6, 2025. Dkt. 2-1, at 6. The motion for reconsideration was denied by operation of law when the Director failed to act on it within twenty-one days. Dkt. 20, at 3; *see* Idaho Code § 67-5246(4). The Director argues PCHP has failed to exhaust because it has not sought judicial review in Idaho state courts. Dkt. 20, at 3 ("PCHP then drops its discussion of the APA altogether and ignores the APA's clear statutory mandate to take its case to state court.").

Recall, however, that litigants do not need to exhaust state court remedies if the state court would be acting in a truly judicial capacity—i.e.., determining rights and liabilities based on "present or past facts and under laws supposed already to exist." *NOPSI*, 491 U.S. at 372. IAPA narrowly cabins judicial review to determining whether the administrative action was legitimate, *see* Idaho Code § 67-5279, a traditionally judicial rather than legislative act, *see Bacon*, 232 U.S. at 137. Because the nature of Idaho courts' judicial review would be truly judicial, PCHP did not need to seek judicial review before filing an *Ex parte Young* action. *NOPSI*, 491 U.S. at 372. PCHP thus exhausted its administrative remedies, at the latest, once the time for the Director to act on the motion for reconsideration passed.

Thus, PCHP has exhausted its state law remedies as required by *Ex parte Young*.

MEMORANDUM DECISION AND ORDER - 13

## B. *Brillhart* Factors

The Director, in reply, asks the Court to abstain under *Brillhart* because this action will unnecessarily decide state law issues. Dkt. 20, at 4. In *Brillhart v. Excess Insurance Company of America*, the Supreme Court held that district courts presented with a request for declaratory relief "should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." 316 U.S. 491, 495 (1942). The Supreme Court reaffirmed *Brillhart* fifty-three years later, holding in *Wilton v. Seven Falls Company* that courts should apply the factors identified in *Brillhart* (rather than the more stringent *Colorado River* test) to determine whether abstention is appropriate in Declaratory Judgment Act cases. 515 U.S. 277, 286 (1995).

> The Ninth Circuit has expanded the list of factors courts are to consider:
>
> In making such a determination, a district court is to consider a variety of factors, including whether retaining jurisdiction would: (1) involve the needless determination of state law issues; (2) encourage the filing of declaratory actions as a means of forum shopping; (3) risk duplicative litigation; (4) resolve all aspects of the controversy in a single proceeding; (5) serve a useful purpose in clarifying the legal relations at issue; (6) permit one party to obtain an unjust res judicata advantage; (7) risk entangling federal and state court systems; or (8) jeopardize the convenience of the parties.

*Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1107 (9th Cir. 2011). The first three are the *Brillhart*/*Wilton* factors. *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 & n.5 (9th Cir. 1998).

The Director limits his argument to the first *Brillhart* factor and explicitly concedes the second two are inapplicable. Dkt. 20, at 4 n.9. But if the Court finds that federal law

MEMORANDUM DECISION AND ORDER - 14

preempts Idaho law, doing so does not necessarily require interpretating of Idaho law—indeed, the Court assumes, for the purposes of this order, that the Director's interpretation of *Idaho* law is correct. It is his interpretation of *federal* law with which the Court may disagree.

In any case, *Brillhart/Wilton* abstention is inapplicable if the complaint includes a prayer for relief seeking a coercive remedy which independently falls within the Court's subject matter jurisdiction. *Snodgrass v. Provident Life & Acc. Ins. Co.*, 147 F.3d 1163, 1167–68 (9th Cir. 1998) (dismissal under *Brillhart* is an abuse of discretion if "there are claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case."). PCHP's complaint seeks injunctive relief, Dkt. 1, at 5 (praying for an order enjoining the Director from enforcing the Order), and, as noted above, claims for injunctive relief against public officers fall within 28 U.S.C. § 1331, *see Shaw*, 463 U.S.at 96 n.14, so *Brillhart* is inapplicable.

### C. *Younger* Abstention

*Younger* abstention requires federal courts to abstain from enjoining pending state proceedings in limited contexts. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013). "*Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *Roshan v. McCauley*, 130 F.4th 780, 782 (9th Cir. 2025) (quoting *Seattle Pac. Univ. v. Ferguson*, 103 F.4th 50, 63–64 (9th Cir.

MEMORANDUM DECISION AND ORDER - 15

2024). "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* at 781–82. (citation modified) (citing *Sprint*, 571 U.S. at 82.). PCHP contests the first through third elements of *Younger* abstention.

### 1. Ongoing Proceedings

"[T]he date for determining whether *Younger* applies is the date the federal action is filed." *ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014) (citation modified). If an action was filed while proceedings were ongoing, the Court must dismiss the action, even if proceedings terminate while the action is pending. *Beltran v. State of Cal.*, 871 F.2d 777, 782–83 (9th Cir. 1988); *see also Gilbertson v. Albright*, 381 F.3d 965, 969 n.4 (9th Cir. 2004) (en banc); *ReadyLink*, 754 F.3d at 759 (citing *Gilbertson*, 381 F.3d at 969 n.4).

PCHP filed on November 6, 2025, Dkt. 1, the same day it sought reconsideration from the Director, Dkt. 2-1, at 6. Although proceedings are no longer ongoing, they were ongoing when PCHP's action was filed. Thus, if the Order otherwise entitles the Director to *Younger* abstention, it qualifies as an ongoing proceeding. *See Beltran*, 871 F.2d at 782–83.

### 2. Quasi-Criminal Civil Enforcement Action

In addition to being ongoing, the proceedings must qualify as "an act of civil enforcement of the kind to which *Younger* has been extended." *Sprint*, 571 U.S. at 79.[6]

---

[6] The Director argues the Order qualifies as a *Younger* proceeding under the third category identified by *Sprint*. *See Sprint*, 571 U.S. at 78 (citing *Juidice v. Vail*, 430 U.S. 327, 336 n.12 (1977)). But the third

(continued)

MEMORANDUM DECISION AND ORDER - 16

Such actions must be "akin to a criminal prosecution in important respects." *Id.* (citation modified). They must be initiated by the State in its sovereign capacity, undertaken to sanction the federal plaintiff for some wrongful act, are typically preceded by an investigation, and are initiated by the filing of a formal complaint or charge. *Id.* at 79–80.

Here, the Order was initiated by the State through the Director, involved preliminary factfinding, and resulted in an Order. The only question is whether it was undertaken to sanction PCHP for a wrongful act. Cease and desist orders have been construed as sanctions under *Younger*. *See, e.g.*, *Altice USA, Inc. v. New Jersey Bd. of Pub. Utilities*, 26 F.4th 571, 577 (3d Cir. 2022); *Minnesota Living Assistance, Inc. v. Peterson*, 899 F.3d 548, 553 (8th Cir. 2018); *see also ABC Sand & Rock Co. Inc. v. Cnty of Maricopa*, 2016 WL 4507108, at *7 (D. Ariz. Aug. 29, 2016); *Wheels Fin. Grp., LLC v. Stolfi*, 2025 WL 1938148, at *4 (D. Or. Jan. 7, 2025). Accordingly, the Court finds the proceedings on the Order qualify as quasi-criminal civil enforcement proceedings under *Younger*.

### 3. Important State Interest

Thus, the question of whether *Younger* abstention is appropriate in this case turns on whether Idaho has an important state interest in regulating the insurance market. In evaluating the state interest, the Court must generally view the interest at a high level of abstraction. *NOPSI*, 491 U.S. at 365–67. In *NOPSI*, the regulated entity argued Louisiana's interest should be evaluated based on the specifics of the action it took: reducing the

---

category of *Younger* proceedings only applies to "civil proceedings involving certain orders uniquely in furtherance of the state *courts'* ability to perform their *judicial* functions" *Sprint*, 571 U.S. at 78 (citation modified and emphasis added). The Director's Order is administrative; enforcing it, therefore, does not implicate Idaho's interest in ensuring its state courts can perform their judicial functions.

plaintiff's retail power rate below that necessary to recover its wholesale cost. *Id.* at 365. The Court held the plaintiff's approach risked collapsing the preemption and *Younger* inquiries; instead, the Court looked to Louisiana's interest in regulating retail rates generally. *Id.* Idaho undoubtedly has an important state interest in the maintenance of fair competition between insurers generally.

However, the Supreme Court left open the possibility that a facially conclusive claim for federal preemption may obviate the state's interest. *Id.* at 367. The Ninth Circuit has recognized that a preemption claim is facially conclusive (or "readily apparent") in cases where the Supreme Court has already decided the issue, in the context of ERISA's broad, relatively simply preemption provision, "and where the federal regulatory jurisdiction of the employees in a bargaining unit had previously been determined." *Woodfeathers, Inc. v. Washington Cnty., Or.*, 180 F.3d 1017, 1021 (9th Cir. 1999). In determining whether preemption is facially conclusive or readily apparent in other contexts, the Ninth Circuit has looked to whether the case presents an issue of first impression, *id.* at 1022, and whether the arguments are colorable. *Rosales v. Ehnes*, 2010 WL 11603082, at 3 (C.D. Cal. Oct. 25, 2010). To determine whether PCHP has a facially conclusive or readily apparent claim to preemption, the Court must, therefore, look at the statutes and precedents regarding preemption here, as well as the Director's arguments against applying preemption. If the Director presents any colorable argument, or an argument of first impression, the Court must abstain under *Younger*.

The Ninth Circuit has thoroughly unpacked the Medicare Advantage preemption statute. 42 U.S.C. § 1395w26(b)(3)(A) provides: "The standards established under this part

MEMORANDUM DECISION AND ORDER - 18

shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." "Prior to Congress's amendments to the Medicare Act in 2003, the preemption provision stated that federal standards would supersede state law and regulations with respect to MA plans to the extent such law or regulation is *inconsistent* with such standards, and it identified certain standards that were specifically superseded." *Aylward v. SelectHealth, Inc.*, 35 F.4th 673, 680 (9th Cir. 2022) (citation modified; emphasis in original). "The 2003 amendments struck both that qualifying clause and the enumerated standards from the provision. The Conference Report accompanying the Act explains that, in striking the clause, Congress intended to broaden the preemptive effects of the Medicare statutory regime." *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1149 (9th Cir. 2010) (citation modified).

Thus, § 1395w26(b)(3)(A) preempts "a state law cause of action that parallels, enforces, or supplements express standards established under Part C and its implementing regulation." *Aylward*, 35 F.4th at 681. It does not matter whether the state law is generally applicable. *See id.* (citing *Do Sung Uhm*, 620 F.3d at 1152–53); *see also Do Sung Uhm*, 620 F.3d 1150 n.25. Nor does it matter whether the state and federal laws conflict. *Aylward*, 35 F.4th at 681.

"[I]n determining what qualifies as a state law 'with respect to MA plans,' . . . our preemption analysis must be based on the relevant state law duty sought to be imposed under the generally applicable law invoked by the [party seeking to enforce state law]." *Id.* (citation modified). When "the standards established under Part C expressly prescribe the

MEMORANDUM DECISION AND ORDER - 19

relevant duties of MA plans . . . those standards 'supersede' any state law duty that would impose obligations on MA plans on that same subject." *Id.* "Although the term 'standard' is not defined in the Act, at the narrowest cut, a 'standard' within the meaning of the preemption provision is a statutory provision or a regulation promulgated under the Act and published in the Code of Federal Regulations." *Do Sung Uhm*, 620 F.3d at 1148 n.10.

The Order interprets Idaho unfair competition law as imposing three duties on PCHP: to pay out commissions, if PCHP accounted for commission expenses in developing premium rates (Dkt. 2-2, at 41 (Order, Conclusion of Law (f))); to make enrollment applications available (Dkt. 2-2, at 41 (Order, Conclusion of Law (g))); and to offer both digital and paper applications (Dkt. 2-2, at 41 (Order, Conclusion of Law (h))).

Congress has assigned CMS the responsibility of regulating the compensation MA organizations pay to brokers, 42 U.S.C. § 1395w-21(j)(2)(D), and CMS has issued rules implementing that assignment. 42 C.F.R. § 422.2274(d) (setting ceiling but not floor). A federal standard, therefore, exists with respect to whether and how much PCHP must pay brokers in commissions.

CMS has also issued regulations which impose duties on MA organizations to deliver several kinds of documents to the consumer, 42 C.F.R. § 422.2267(e), including the enrollment form specifically, 42 C.F.R. § 422.2267(e)(6) (defining the enrollment form as a "model" and "required" material), and has specified the manner in which those documents must be delivered, 42 C.F.R. § 422.2267(d) ("MA organizations must mail required materials in hard copy or provide them electronically, following the requirements in paragraphs (d)(1) and (2) of this section."). A federal standard, therefore, exists with

MEMORANDUM DECISION AND ORDER - 20

respect to PCHP's duty to furnish enrollment materials and with respect to the means by which it choses to do so.

Finally, CMS has issued regulations establishing what content must appear on MA organizations' websites. 42 C.F.R. § 422.2265(b) ("MA organization's [*sic*] websites must include the following content . . . (14) Enrollment instructions and forms"). A federal standard, therefore, exists with respect to what materials PCHP must include on its website.

Federal standards thus cover each of the duties the Director seeks to impose on PCHP via Idaho unfair competition law. But since the Director is entitled to *Younger* abstention unless preemption is "readily apparent," the Court must determine whether any of the Director's arguments against preemption are colorable.

The Director argues that "the *Uhm* court reasoned that if a state court were to determine that Humana's marketing materials were misleading, it would directly undermine CMS's prior determination to the contrary, which is a lynchpin to the preemption inquiry." Dkt. 8, at 8.[7] But the Ninth Circuit has specifically rejected the idea that a state law must undermine—directly or otherwise—CMS to fall within the Medicare Advantage preemption provision. *Aylward*, 35 F.4th at 681 ("Therefore, we must decide whether Part C's preemption provision preempts a state law cause of action that parallels, enforces, or supplements express standards established under Part C and its implementing

---

[7] The Director reiterates that position a few pages later when he argues, based on *California ex rel. Lockyer v. Sempra Energy Trading*, 292 F. App'x 676, 678 (9th Cir. 2008), that *Do Sung Uhm*'s reasoning was predicated on the idea that the MA preemption statute preempts only those state laws which would directly undermine federal law. Dkt. 8, at 10–11. But *Do Sung Uhm* explicitly refused to endorse that exact proposition, 620 F.3d 1149–50; *see also id.* at 1150 n.24, and in any case *Aylward* rejected the proposition outright, 35 F.4th at 681 (holding preemption applied to state law causes of action which parallel, enforce, or supplement federal standards).

MEMORANDUM DECISION AND ORDER - 21

regulation. We conclude that it does."). The Director's argument that only state laws which undermine CMS are preempted is squarely foreclosed by *Aylward*.

The Director also implies that since CMS lacks a standard specifically describing business or unfair trade practices, the Director can regulate in that space. Dkt. 8, at 9. But that argument does not follow from the source cited, and Ninth Circuit case law precludes it regardless. The Director supports his argument that he can regulate unfair business practices in the absence of a CMS standard on point by citing *In re Western States Wholesale Natural Gas Antitrust Litigation*, 346 F. Supp. 2d 1123, 1128 (D. Nev. 2004). But *In re Western States* is inapposite on its face. *In re Western States* dealt with an entirely different area of doctrine[8] in the context of an entirely different federal law[9] which did not possess an express preemption clause[10] and had never been found to preempt the state regulations at issue. *Id.* at 1132.

Even if *In re Western States* was applicable, it provides no support to the Director's argument. The question in the cited portion of *In re Western States* cited by the Director was whether the Federal Energy Regulatory Commission's ("FERC") exclusive jurisdiction over claims under the Natural Gas Act rendered state unfair competition laws field or conflict preempted. The answer in that case was no, because "Defendants' core

---

[8] That is, the scope of arising under jurisdiction. *In re Western States* dealt with whether regulated entities could remove state law antitrust and unfair competition claims to federal court based on FERC's exclusive jurisdiction over claims under the Natural Gas Act. 346 F. Supp. 2d at 1130. The regulated entities' argued, *inter alia*, that the Natural Gas Act field preempted state law created a substantial, disputed federal question such that the regulator's claims arose under federal law. *Id.* at 1137–38. The Court rejected the entities' arguments because the Natural Gas Act did not field preempt natural gas regulation generally or the regulator's claims specifically. *Id.*

[9] The Natural Gas Act.

[10] *See In re W. States*, 346 F. Supp. 2d at 1132.

MEMORANDUM DECISION AND ORDER - 22

conduct in these claims is not governed by federal law." *Id.* at 1137. But here, PCHP's core conduct *is* governed by federal standards.

More generally, *Aylward* and *Do Sung Uhm* foreclose the Director's argument that federal standards do not preempt Idaho unfair competition law unless CMS establishes standards specifically governing unfair competition. In *Do Sung Uhm*, for instance, the Ninth Circuit considered whether generally applicable state consumer protection laws were preempted by CMS's marketing standards. 620 F.3d at 1150–53. In holding they were, the Ninth Circuit did not find a CMS standard which generally governed consumer protection. Rather, it looked to the state law plaintiff's theory of the case: the state law plaintiff argued the MA organization defendant violated state consumer protection laws by misrepresenting prescription drug coverage on marketing materials. *Id.* at 1150.[11] But, the Ninth Circuit pointed out, a CMS standard covered the allegedly tortious acts by which Humana allegedly violated state consumer protection law (namely, the content of marketing materials). *Id.* at 1150–51.

Likewise, in *Aylward*, the Ninth Circuit considered whether a federal standard covered the substance of the state law plaintiff's claim (that the MA organization violated a common law duty to timely handle a preauthorization request) rather than its form (a negligence action). 35 F.4th at 682.

In determining whether 42 U.S.C. § 1395w-26(b)(3) preempts state law, the Court

---

[11] For the same reasons, the Director's argument that he is attempting to regulate MA organization's *conduct* rather than their *plans*, *see* Dkt. 8, at 4, is unavailing. *See also Aylward*, 35 F.4th at 680 (a state law is "with respect to MA plans" if it conflicts with a federal standard). If a federal standard governs MA organizations' conduct—and several do—overlapping state laws are laws with respect to MA plans.

MEMORANDUM DECISION AND ORDER - 23

must, therefore, look to whether a federal standard governs the conduct by which an MA organization allegedly violated state law. If a federal standard governs the MA organization's allegedly unlawful conduct, the state law is preempted. *Do Sung Uhm* and *Aylward* cannot be colorably read any other way. *See Ahmad v. UnitedHealth Group Incorporated*, 2026 WL 2034036 (9th Cir. July 14, 2026). As discussed above, a federal standard covers each of the acts by which PCHP allegedly violated state unfair competition law.[12]

Upon review, the Court finds that *Do Sung Uhm* and *Aylward* squarely control this case, and none of the Director's arguments against preemption are colorable.[13] Accordingly, the Court finds PCHP has stated a facially conclusive claim for preemption, and *Younger* does not apply.

### D. Remaining Preliminary Injunction Factors

By finding PCHP's preemption claim facially conclusive, the Court necessarily finds it likely to succeed on the merits. The Court will briefly discuss the remaining *Winter* factors for completeness.

---

[12] The Director also argues the Department's memorandum of understanding with CMS—which contemplates information sharing regarding, inter alia, cease and desist orders, means that "CMS places no limitations or restriction on the [Department's] actions." Dkt. 8, at 11. The Court does not find this argument colorable, either. An agreement to share information does not, on its face, imply endorsement of every action the parties agree to share information about, nor does federal law authorize CMS to subject insurers to state regulation on a state-by-state basis notwithstanding § 1395w-26(b)(3). CMS certainly does not interpret the memorandum of understanding that way. *See* Dkt. 14, at 14.

[13] *Rosales* provides a useful contrast to this case. There, the Central District of California found preemption was not readily apparent in a § 1395w-26(b)(3) case because the California Department of Managed Health Care raised two colorable issues: whether § 1395w-26(b)(3) immunized brokers rather than simply MA organizations, and whether the Department's actions could fall within the licensing exception to § 1395w-26(b)(3). Unlike in *Rosales*, where the Department raised two colorable arguments against preemption, the Director advances no colorable argument here.

An injunction is an equitable remedy and will not issue if the plaintiff has an adequate remedy at law. *See Winter*, 555 U.S. at 22. As the Court noted in its prior Order, PCHP is threatened with the allegation that it is violating Idaho law on fair competition, laws which do not apply to it. The resulting threat to its business reputation is an intangible harm that cannot be estimated or remedied after the fact. *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057–58 (9th Cir. 2009). The Court accordingly finds irreparable harm here.

Finally, PCHP must show that the balance of equities and the public interest favor temporary relief. *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023). Since the Director opposes the relief, the balance of the equities and public interest merge. *Id.* As the Court previously acknowledged, promoting fair and accessible market activity is in the interest of the people of Idaho. Nonetheless, the federal public interest in a nationally consistent regulatory scheme for MA plans—and the Constitutional interest in upholding the Supremacy Clause—supersedes the Director's interest. *Am. Trucking Assoc's*, 559 F.3d at 1059–60.

Because the Court finds that PCHP has met each of the *Winter* factors, the Court GRANTS the Motion for Temporary Restraining Order and ENJOINS the Director from enforcing the Order against PCHP.

### E. Motion to Strike

Finally, the Court declines to strike any portion of PCHP's briefs. The Director argues portions of PCHP's Memorandum in Opposition to the Director's Motion to Dismiss (Dkt. 15) spuriously implied the Director had violated the Court's temporary restraining

MEMORANDUM DECISION AND ORDER - 25

order by pursuing an administrative enforcement action against PCHP based on its failure to answer the administrative inquiry sent by the Director to PSHP. Dkt. 21, at 2. PCHP's wording does give the erroneous impression that the Director initiated further proceedings to enforce the Order. But, as the Court's Order at Dkt. 18 makes clear, the Director did not violate the TRO by filing an administrative enforcement action related to the administrative inquiry because the Court's TRO extended only to proceedings "based on the interpretations given in the Cease and Desist Order or Bulletin 25-06." Dkt. 18, at 2 (citing Dkt. 12, at 13). The complete record in this case vindicates the Director's position that he complied with the Court's TRO, so striking the ambiguous portion of PCHP's brief is unnecessary. In the exercise of its discretion, the Director's Motion to Strike is DENIED.

## V. CONCLUSION

The intricacies of federal mandatory and discretionary jurisdiction are incredibly complex, and the Court thanks the parties for their able briefing. Upon review, the Court finds PCHP exhausted its administrative remedies and that *Younger* abstention does not apply as PCHP makes a facially conclusive claim to preemption.

## VI. ORDER

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. PCHP's Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 2) is GRANTED. The Director is ENJOINED from enforcing the Order in any subsequent proceedings before the Department or Idaho courts. The Director is FURTHER ENJOINED from initiating actions to sanction PCHP on the theory that PCHP violated Idaho unfair competition or unfair business practices law by

MEMORANDUM DECISION AND ORDER - 26

withholding or terminating broker compensation, by removing enrollment forms or other materials from its website, or by otherwise obstructing Idaho residents from accessing enrollment forms or other materials.

2. The Director's Motion to Dismiss (Dkt. 9) is DENIED.

3. The Director's Motion to Strike (Dkt. 21) is DENIED.

DATED: July 30, 2026

David C. Nye
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 27